## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DARLENE M.,

        *Plaintiff*,

    v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,[1]

        *Defendant.*

Civil Action No. 20-1817 (RDM)

## <u>MEMORANDUM OPINION</u>

Plaintiff Darlene M. brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability insurance benefits, or, in the alternative, remand for a new administrative hearing. Now before the Court are Magistrate Judge Harvey's Report and Recommendation ("R&R"), Dkt. 24, Plaintiff's objections to the Report, Dkt. 26, and the Commissioner's response to those objections, Dkt. 27. For the reasons that follow, the Court agrees with Judge Harvey that the Commissioner's decision denying Plaintiff benefits should be affirmed. The Court, accordingly, will **ADOPT** the Report and Recommendation, will **GRANT** the Commissioner's motion for judgment of affirmance, Dkt. 20, and will **DENY** Plaintiff's motion for judgment of reversal, Dkt. 18.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Commissioner of Social Security is substituted as Defendant.

# I. BACKGROUND

## A.     Statutory and Regulatory Framework

Before a claimant may recover disability insurance benefits under Title II of the Social

Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, the Commissioner must conclude that she is

"disabled" within the meaning of the Act and governing regulations, *id.* §§ 416(i), 423(d).  As

relevant here, the Act defines "disability" to mean the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  *Id.* § 423(d)(1)(A).  To determine whether a claimant is

disabled, an Administrative Law Judge ("ALJ") typically holds a hearing and performs a five-

step inquiry.  20 C.F.R. § 404.1520(a)(4).

Under this sequential inquiry, the claimant bears the burden of proof on the first four

steps.  *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  The claimant must first show that

she is not presently engaged in "substantial gainful activity;" if she is engaged in "substantial

gainful activity," she is "not disabled."  20 C.F.R. § 404.1520(a)(4)(i).  Second, she must show

that she has a "severe medically determinable physical or mental impairment"—or "combination

of impairments"—that "meets the duration requirement."  *Id.* § 404.1520(a)(4)(ii).  Third, she

must show that her impairment "meets or equals one of [the] listings" in the relevant regulation,

20 C.F.R. Pt. 404, Subpt. P, App. 1, and "meets the duration requirement," *id.*

§ 404.1520(a)(4)(iii); if so, "she is deemed disabled and the inquiry is at an end," *Butler*, 353

F.3d at 997.  "If the claimant does not satisfy step three, the inquiry proceeds to the fourth step,

which requires her to show that she suffers an impairment that renders her incapable of

performing 'past relevant work.'"  *Id.* (quoting 20 C.F.R. § 404.1520(e)).  In making that

determination, the ALJ must consider the claimant's residual functional capacity ("RFC") and must compare her RFC "with the physical and mental demands of [her] past relevant work."  20 C.F.R. §§ 404.1520(a)(iv), 404.1520(f).[2]

If the claimant carries her "burden on the first four steps, the burden [then] shifts to the Commissioner [at] step five," who must "demonstrate that the claimant is able to perform 'other work' based on a consideration of her [RFC], age, education and past work experience."  *Butler*, 353 F.3d at 997 (quoting 20 C.F.R. §§ 404.1520(f), 416.920(f)).  If the claimant is unable to perform "other work" and she meets the duration requirement, she is disabled within the meaning of the statute.  20 C.F.R. § 404.1520(g).

**B.     Procedural History and Administrative Background**

The Court need not repeat Judge Harvey's thorough description of the relevant procedural history and administrative background; instead, the Court adopts and incorporates his summary of Plaintiff's disability claims, the evidence and arguments before the ALJ, and the ALJ's decision.  *See* Dkt. 24 at 4–19.  The Court will, however, briefly highlight those portions of the administrative record that bear on Plaintiff's objections to the Report and Recommendation.

Plaintiff filed an application for disability benefits in June 2017, claiming a disability onset date of May 6, 2017, stemming from right-side weakness as the result of a stroke.  Dkt. 15-6 at 2–4, 6.  Her application was denied at the initial level of review in December 2017 and on reconsideration in February 2018.  Dkt. 15-3 at 10–11, 22–23.  She then requested a hearing before an ALJ.  Dkt. 15-4 at 15; *see* Dkt. 15-2 at 63–97.  At the hearing, Plaintiff was

---

[2] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* § 404.1560(b)(1); *see also id.* § 416.960(b)(1).

represented by her current counsel.  *Compare* Dkt. 15-2 at 11, *with* Dkt. 18-1 at 46.  The ALJ

issued his decision denying Plaintiff's claim in August 2019.  Dkt. 15-2 at 8–26.

      At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since May 6, 2017, the date of the alleged onset of her disability.  *Id.* at 14.  At step two, he

found that Plaintiff had four impairments that were properly classified as "severe" under the

regulations:  "Diabetes mellitus," "obesity," "residual weakness from an acute cerebrovascular

episode," and "tobacco addiction and related throat and breathing issues."  *Id.* (citing 20 C.F.R.

§ 404.1520(c)).  At step three, however, the ALJ found that Plaintiff did "not have an

impairment" that met or medically equaled the severity of one the impairments listed in 20

C.F.R. Pt. 404, Subpt. P, App. 1.  *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

The ALJ considered Plaintiff's impairments under various listings—most relevant here, under

Listing 11.04 (the listing for "vascular insult to the brain," commonly referred to as stroke)—and

found that her impairments neither met nor medically equaled any listing.  *Id.* at 14–18.

      At step four, the ALJ considered Plaintiff's RFC in considerable detail.  *See id.* at 18–24.

Among other things, he found that her "medically determinable impairments could reasonably be

expected to cause [her] alleged symptoms" but that her "statements concerning the intensity,

persistence and limiting effects of th[o]se symptoms [were] not entirely consistent with the

medical evidence and other evidence in the record" and that "her impairments [were] not as

severe as her allegations would suggest."  *Id.* at 19.  The ALJ explained the basis for that finding

over several pages of his decision, *id.* at 19–24, before concluding that Plaintiff "is capable of

performing light work," *id.* at 24.  The regulations define "light work" as work that involves

"lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

to 10 pounds. . . .  [A] job is in this category when it requires a good deal of walking or standing,

4

or when it involves sitting most of the time with some pushing and pulling of arm or leg

controls."  20 C.F.R. § 416.967(b).

At step five, the ALJ found—based on the testimony of a vocational expert—that

Plaintiff was "unable to perform [her] past relevant work" as a "mental health clerk."  Dkt. 15-2

at 24.  The ALJ next considered whether—in light of Plaintiff's RFC, age, education, and work

experience—"there are jobs that exist in significant numbers in the national economy that

[Plaintiff] [could] perform."  *Id.* at 25.  Having already concluded that Plaintiff was capable of

performing the full range of light work, the ALJ did not rely on the vocational expert's testimony

in response to hypotheticals posed at the hearing, both of which were limited to "sedentary

work" and one of which included additional limitations as well.  *See id.* at 93–94.  Instead, he

consulted the Medical-Vocational Guidelines (referred to as the "Grids") to determine whether

an individual in Plaintiff's age category at the time of the alleged disability onset date ("younger

individual") or at the time of the hearing ("closely approaching advanced age"), with a limited

education and the ability to communicate in English, and with her RFC could perform jobs that

exist in significant numbers in the national economy.  *Id.* at 24–25.  For that criteria, the Grids

supported a finding of "not disabled" in both age categories.  *See id.*; *see also* 20 C.F.R. Pt. 404,

Subpt. P, App. 2, Rules 202.11, 202.18.  The ALJ, accordingly, found that Plaintiff was not

disabled.  Dkt. 15-2 at 25.

The ALJ's decision became the Commissioner's final decision when the Appeals Council

denied Plaintiff's request for review on June 16, 2020.  Dkt. 15-2 at 2–7.  Plaintiff commenced

this action on July 1, 2020, Dkt. 1, and the Court referred the matter to a magistrate judge for

case management and a Report and Recommendation, *see* Min. Order (Oct. 8, 2020); Min. Order

(Oct. 12, 2020); Min. Order (Feb. 25, 2021).  Plaintiff subsequently filed a motion for judgment of reversal, Dkt. 18, and the Commissioner filed a motion for judgment of affirmance, Dkt. 20.

In seeking reversal, Plaintiff argued: (1) that the ALJ improperly evaluated her functioning when determining whether her symptoms met or medically equaled the requirements for the "vascular insult to the brain" listing, Dkt. 18-1 at 10–24; (2) that the ALJ made several missteps when determining that she had the RFC to perform the full range of light work, including by failing to give appropriate weight to her treating physician's opinions, insufficiently explaining his findings as to her exertional limitations, and erroneously rejecting her testimony about the limiting effects of her symptoms, *id.* at 24–40; and (3) that the ALJ "erred when he relied exclusively on the [Grids] to determine" that Plaintiff was "'not disabled' at step five of the sequential evaluation," *id.* at 41; *see id.* at 41–45.

In a Report and Recommendation issued on September 3, 2021, Judge Harvey recommends that the Court deny Plaintiff's motion for judgment of reversal and grant the Commissioner's motion for judgment of affirmance.  Dkt. 24 at 2.  First, the R&R concludes that the ALJ's determination that Plaintiff failed to meet the requirements of Listing 11.04 for "vascular insult to the brain" was based on substantial evidence and should be affirmed.  *See id.* at 21–36.  Second, with respect to Plaintiff's RFC, the R&R concludes that the ALJ: (1) accorded appropriate weight to the opinion of Plaintiff's treating physician, *id.* at 37–44; (2) permissibly rejected Plaintiff's subjective testimony as inconsistent with other evidence in the record and adequately explained that determination, *id.* at 44–53; and (3) sufficiently explained his finding with respect to her exertional limitations, *id.* at 53–60.  Finally, the R&R concludes that the ALJ's use of the Grids was permissible.  *Id.* at 60–62.  As Judge Harvey explains, an ALJ may rely exclusively on the Grids to determine disability if the claimant's RFC allows her

to perform the full range of sedentary, light, or medium work; in contrast, an ALJ may not exclusively rely on the Grids if the claimant has additional restrictions, such as restrictions based on mental functioning.  *Id.* at 61.  Because the ALJ's RFC determination that Plaintiff could perform the full range of light work was supported by substantial evidence, the R&R concludes that the ALJ permissibly relied on the Grids to reach his ultimate finding that Plaintiff was "not disabled."  *Id.* at 62.

Plaintiff timely filed objections, urging the Court to "decline to follow" the Report and Recommendation for five reasons.  Dkt. 26.  First, she contends that, "in its recommendation to affirm the ALJ's ruling that [Plaintiff] does not meet or equal Listing 11.04[,] the Report violates the *Chenery* doctrine."  *Id.* at 1.  Second, Plaintiff claims that "the Report fails to recognize that the ALJ's evaluation of the opinion of [Plaintiff's] treating physician . . . is not supported by substantial evidence."  *Id.*  Third, Plaintiff argues that the "Report fails to recognize that the ALJ erred while determining" that Plaintiff had the RFC to perform light work because "he effectively ignored the medical opinion of every physician on record, thereby impermissibly playing doctor."  *Id.* at 2.  Fourth, Plaintiff argues that "the Report fails to recognize that the ALJ failed to properly credit [Plaintiff's] subjective statements regarding the intensity, persistence, and limiting effects of her objectively documented physical limitations."  *Id.*  Fifth, Plaintiff asserts that the "Report errs when it conclude[d] that the ALJ properly [had] employed" the Grids to find Plaintiff "not disabled."  *Id.*

The Commissioner's seven-page response asks the Court to adopt the Report and Recommendation in full.  Dkt. 27 at 7.  According to the Commissioner, Plaintiff's objections merely repeat the arguments she raised in her initial motion, which the Report and Recommendation "carefully considered" and rejected.  *Id.* at 1.  On the Commissioner's telling,

the R&R correctly concludes that "substantial evidence supported the ALJ's: (i) listing

determination, (ii) evaluation of medical opinions, Plaintiff's [RFC], and her subjective

complaints; and (iii) use of the Grids to conclude that Plaintiff was not disabled." *Id.* at 1–2.

## II.  LEGAL STANDARD

After a magistrate judge issues a Report and Recommendation, "[t]he district judge must

determine de novo any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3).  The judge is not required, however, to review those portions of a

magistrate judge's report to which no objection is made.  *Callaway v. Berryhill*, 292 F. Supp. 3d

289, 293 (D.D.C. 2018); *Porter v. Colvin*, 951 F. Supp. 2d 125, 129 (D.D.C. 2013).  "The district

judge may accept, reject, or modify the recommended disposition; receive further evidence; or

return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"Proper objections 'shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for objection.'"  *Shurtleff v. EPA*, 991

F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting Local R. Civ. P. 72.3(b)).  Objections that "merely

rehash an argument presented and considered by the magistrate judge are not properly objected

to and are therefore not entitled to de novo review." *Id.* (internal quotation marks omitted).

Thus, if the plaintiff "makes only conclusory or general objections, or simply reiterates his

original arguments, the Court reviews the Report and Recommendation only for clear error."

*Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (quoting *Salmini v. Astrue*, 2009 WL

1794741, *1 (N.D.N.Y. June 23, 2009)); *see also Sciacca v. FBI*, 23 F. Supp. 3d 17, 27 (D.D.C.

2014).

When this Court reviews a Report and Recommendation de novo, it reviews the

Commissioner's decision for substantial evidence.  "Substantial evidence is 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353

F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It "requires more than a

scintilla, but . . . less than a preponderance of the evidence." *Id.* (internal citation omitted).

"Substantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel.*

*Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).  The claimant bears the burden of

demonstrating that the ALJ's decision was not based on substantial evidence or contained an

error of law. *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  The reviewing

court must determine whether the ALJ "has analyzed all evidence and has sufficiently explained

the weight he has given to obviously probative exhibits." *Id.* at 65 (quoting *Butler*, 353 F.3d at

999).  The court "is not permitted," however, "to re-weigh the evidence and [to] reach its own

determination." *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984); *see Butler*, 353 F.3d

at 999 ("[W]e are not to determine ourselves whether [claimant] is disabled; we assess only

whether the ALJ's finding . . . is based on substantial evidence and a correct application of the

law.").

### III. ANALYSIS

As noted, Plaintiff raises five objections to the Report and Recommendation:

First, in its recommendation to affirm the ALJ's ruling that [Plaintiff] does not meet or equal Listing 11.04, the Report violates the *Chenery* doctrine.  When properly analyzed, the ALJ's decision regarding Listing 11.04 is not supported by substantial evidence.

Second, the Report fails to recognize that the ALJ's evaluation of the opinion of [Plaintiff's] treating physician, Dr. Janelle Dennis, is not supported by substantial evidence.

Third, the Report fails to recognize that the ALJ erred while determining that [Plaintiff] had the [RFC] . . . to perform the full range of light work because he effectively ignored the medical opinion of every physician on record, thereby impermissibly playing doctor.

Fourth, the Report fails to recognize that the ALJ failed to properly credit [Plaintiff's] subjective statements regarding the intensity, persistence, and limiting effects of her objectively documented physical limitations.

Fifth, the Report errs when it concludes that the ALJ properly employed the Medical-Vocational Guidelines to find [Plaintiff] not disabled.

Dkt. 26 at 1–2.  The Court addresses each objection in turn.

## A.   Plaintiff's Objections Regarding the ALJ's Paragraph C, Listing 11.04 Determination

Plaintiff first argues that the Report and Recommendation "should not be adopted because it relies on impermissible post-hoc rationalizations to reach the conclusion that the ALJ's evaluation of [Plaintiff]'s impairments under Paragraph C of Listing 11.04 is supported by substantial evidence."  Dkt. 26 at 2.  By way of background, to meet the listing for "vascular insult to the brain," a claimant must satisfy the criteria in Paragraph A, B, or C of Listing 11.04. Plaintiff challenges only the ALJ's finding that she does not meet the Paragraph C criteria.  Dkt. 24 at 21.  Paragraph C requires that a claimant show:

Marked limitation in physical functioning *and* in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:

1. Understanding, remembering, or applying information; or

2. Interacting with others; or

3. Concentrating, persisting, or maintaining pace; or

4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04.C (emphasis added) (internal citations omitted); *see* Dkt. 24 at 21.  Examples of "[p]hysical functioning . . .  include specific motor abilities, such as independently initiating, sustaining, and completing" work-related physical

activities, and "functions of the body that support motor abilities, such as the abilities to see, breathe, and swallow."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00.G.3.a.

As Plaintiff correctly observes, it is a "simple but fundamental rule of administrative law" that the reviewing court, "in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also, e.g.*, *Butler*, 353 F.3d at 1002 (declining to accept the Commissioner's contention that the "ALJ must have interpreted" treating physician's opinion that claimant "should never stoop to mean that she should stoop 'very little' or 'only occasionally,'" (internal citation omitted)).  Here, Plaintiff points to several portions of the Report and Recommendation's Paragraph C discussion that she characterizes as impermissible post-hoc rationalization.  As explained below, the Court is unpersuaded.[3]

1.

First, Plaintiff maintains that the Report and Recommendation relies upon post-hoc rationalization in its analysis of the ALJ's finding that Plaintiff did not have a marked limitation in the "interacting with others" area of mental functioning.  Plaintiff's objection is as follows:  In rejecting her original argument, Dkt. 18-1 at 17, that the ALJ had failed to consider her "slurred speech and trouble expressing herself" as part of the "interacting with others" area of mental functioning, the Report and Recommendation impermissibly makes the post-hoc conclusion that "slurred speech or reaching for words are not a limitation."  Dkt. 26 at 4.  It is true that, in

---

[3] Indeed, the R&R correctly cites and relies upon *Chenery*, noting that the Commissioner's opposition, Dkt. 20, to Plaintiff's motion for reversal, Dkt. 18, "repeatedly cites evidence the ALJ did not cite and employs reasoning the ALJ did not employ," making the submission of "limited use."  Dkt. 24 at 23 n.15.

considering Plaintiff's argument, the R&R notes the relevant regulatory language at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00.G.3.b.ii, before observing that "this area of functioning is concerned with whether an individual can behave appropriately in work situations; it is not clear that slurred speech or sometimes 'reaching for words' (as it was described at the hearing) could be considered a limitation." Dkt. 24 at 28.  But, as relevant here, Judge Harvey continues: "More importantly, however, the ALJ *did* address Plaintiff's speech issues." *Id.* (emphasis in original).  The R&R notes, in particular, that the ALJ had found (albeit in his Paragraph A analysis) that, based on treatment notes, Plaintiff's speech issues had improved in less than three months to the point where she could verbally express herself without problem by June 2017. *See id.*

Plaintiff argues that Judge Harvey erred in two respects.  First, she maintains that his skepticism about whether slurred speech could be considered a "limitation" constitutes a post-hoc justification for the ALJ's decision and thus violates the *Chenery* doctrine.  Dkt. 26 at 4–5.  The R&R, says Plaintiff, "substituted its post-hoc interpretation of the medical evidence, and which symptoms are strong enough to cause a functional limitation, for the ALJ's." *Id.* at 5.  Plaintiff's argument ignores the full scope of what Judge Harvey wrote:  He starts by correctly describing Plaintiff's argument that the ALJ erred by failing to consider her "slurred speech and trouble expressing herself" in evaluating whether she had a marked limitation in interacting with others.  Dkt. 24 at 27 (citing Dkt. 18-1 at 17).  He then observes—in passing—that it is unclear that "slurred speech" qualifies as a relevant limitation under the "interacting with others" umbrella. *Id.* at 28.  Contrary to Plaintiff's assertion, he does not decide that slurred speech "cannot rise to the level of a limitation." Dkt. 26 at 5.  Critically, Judge Harvey then sets forth the basis for his recommendation that the Court reject Plaintiff's argument:  That is, the ALJ *did,*

*in fact, consider and address* "Plaintiff's speech issues" and reasonably concluded, based on treatment notes that, although she experienced a period of dysarthria, Plaintiff's speech improved and, "in less than 3 months," she "was able to 'express herself nicely.'"  Dkt. 24 at 28.  Thus, consistent with *Chenery*, the R&R ultimately recommends that the Court uphold the ALJ's decision based on the ALJ's reasoning—that is, treatment notes indicating that Plaintiff "was able to express herself nicely."

According to Plaintiff, the *Chenery* problem nonetheless persists because the ALJ's discussion of Plaintiff's improved speech occurred in the context of Paragraph A, yet the Report and Recommendation considers the ALJ's finding for purposes of Paragraph C.  *See* Dkt. 26 at 5–6.  The Court, once again, is unpersuaded.  As the R&R explains, it would "exalt form over substance" to ignore the ALJ's findings with respect to Paragraph A—where the ALJ found, based on treatment notes, that Plaintiff's slurred speech had improved by June 2017 and that she was able to "express herself nicely"—in "addressing the ALJ's decision regarding the Paragraph C criteria."  Dkt. 24 at 28.  To be sure, few rules of administrative law rival the venerated status of the *Chenery* doctrine.  But another rule comes close:  Courts should not hesitate to uphold administrative decisions "of less than ideal clarity if the agency's path may reasonably be discerned."  *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009).  Here, the ALJ found that Plaintiff "was able to 'express herself nicely.'"  Dkt. 15-2 at 15.  Although he made that finding in the context of Paragraph A, and he did not repeat it for purposes of Paragraph C, the Court has no difficulty discerning his reasoning and identifying "what evidence was credited," *Butler*, 353 F.3d at 1002.

Nothing more is required to uphold the ALJ's decision.  *See McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002) (per curiam) ("[W]e agree with the district court that the ALJ need only review medical evidence once in his decision."); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."); *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (remand not required where "it is clear from the record which listing or listings . . . were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows [the] [c]ourt [to] readily. . .  determine whether there was substantial evidence to support the ALJ's Step Three conclusion"); *Harris v. Astrue*, 2009 WL 801347, at *7 (N.D. Cal. Mar. 25, 2009) (finding no error in ALJ's step three determination where the "discussion and evaluation of evidence at step four supports the. . .  conclusion at step three that [the plaintiff's] impairments did not equal [a listing]"); *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1044 (D. Colo. 2015) (finding no error in the ALJ's weighing of a treating source's opinion where it was supported by evidence "more fully explicated elsewhere" in the ALJ's opinion).

2.

Equally unpersuasive is Plaintiff's argument that the R&R relies on "post hoc" rationalization in its discussion of the "concentrating, persisting, and maintaining pace" area of mental functioning.  In her original motion for judgment of reversal, Plaintiff argued that the ALJ erred in finding that she had no limitation in "concentrating, persisting, and maintaining pace" for purposes of Paragraph C because he ignored evidence that she suffers from fatigue, decreased coordination, and trouble concentrating.  Dkt. 18-1 at 18–19.  The Report and

14

Recommendation considers Plaintiff's argument and concludes that the ALJ's findings regarding Plaintiff's ability to concentrate, persist, and maintain pace are supported by substantial evidence for numerous reasons.  Dkt. 24 at 29–32.  The R&R first observes that "Plaintiff points to no evidence in the record that [her] mildly impaired cognition or fatigue led to marked or significant troubles in concentration, persistence, or pace."  *Id.* at 31.  Next, the R&R reasons that the ALJ did not "ignore" record evidence of fatigue, decreased coordination, and trouble concentrating but, rather, addressed the issue in his analysis at Step Four.  The R&R explains:

> As Plaintiff points out, some of her testimony about trouble concentrating came in connection with testimony about driving, when she asserted that she got anxious and nervous "if a truck or a bus or something comes."  ECF No. 18-1 at 19 (quoting ECF No. 15-2 at 85).  However, the ALJ clearly considered the evidence about her driving ability, as he noted that her ability to operate a motor vehicle—an ability that is not in dispute here (although Plaintiff did testify that she did not like to drive at night and got anxious while driving)—"require[d] her [to] maintain functional levels of concentration."  ECF No. 15-2 at 16.  More, the ALJ specifically noted in his step four analysis that Plaintiff testified about issues with fatigue and concentration and he thus considered those issues.  ECF No. 15-2 at 19.  Indeed, he found that Plaintiff's testimony about the severity of such symptoms was not entirely credible because it conflicted with substantial evidence in the record, *id.*, including Plaintiff's own reports on disability forms, *see id.* at 16.

Dkt. 24 at 31.

Plaintiff argues that the Report and Recommendation "makes an impermissible post-hoc connection between the ALJ's discussion of the consistency of [her] subjective statements with the medical evidence at *step four*[,] and the ALJ's discussion of [her] ability to concentrate, persist, and maintain pace at *step three*, which cannot substitute for the legally insufficient support provided by the ALJ at *step three*."  Dkt. 26 at 7 (emphasis added).  Plaintiff's *Chenery* objection fails for the same reasons explained above and, as discussed below, the ALJ's reasoning and explanation was otherwise sufficient and supported by substantial evidence.

Setting *Chenery* aside for the moment, Plaintiff next objects that the R&R "errs by concluding that a single mental status examination and isolated statements" from Plaintiff were "enough to constitute substantial evidence" to support the ALJ's finding that Plaintiff had no limitation in concentrating, persisting, or maintain pace. Dkt. 26 at 8–9. Reviewing Judge Harvey's recommendation de novo—but affording due deference to the ALJ's fact-finding—the Court agrees that the ALJ's finding that Plaintiff did not have a marked limitation in the "concentrating, persisting, and maintain pace" area of mental functioning is supported by substantial evidence.

As Plaintiff observes, Dkt. 26 at 7, Judge Harvey begins his analysis of this factor by clarifying that the inquiry turns on the claimant's ability to "focus attention on work activities and to stay on-task," 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 11.04.G.3.b.iii, and not on memory or understanding, *see* Dkt. 24 at 29. For that reason, as the R&R explains, the ALJ unnecessarily addressed "several mental status examinations [that] showed that Plaintiff had trouble recalling words after a brief delay," finding that other evidence indicated that she "was able to recall three . . . words after a brief delay on at least one occasion," that there was "no evidence of psychiatric impairment[,]" and that she "could spell words backwards and forwards, could perform serial 3s, and was able to count and perform calculations with quarters." Dkt. 24 at 8–9, 24, 59–604 (citing, *inter alia*, Dkt. 15-2 at 16).

But that detour ultimately had no effect on the ALJ's decision. Separate and apart from the ALJ's consideration of memory, the ALJ cited to substantial evidence showing that Plaintiff has no limitation on her ability to concentrate, persist, or maintain pace, but rather "has normal concentration and attention." Dkt. 15-2 at 16. As Judge Harvey persuasively explains, the ALJ's discussion relied on the following substantial evidence:

> [The ALJ] asserted that "[m]ental status examinations have shown that [Plaintiff] has normal concentration and attention," and supports that finding by citing, as an example, a record from May 2017, which states that Plaintiff has "good" attention.   ECF No. 15-2 at 16 (citing ECF No. 15-8 at 11). Moreover, he pointed to evidence from Plaintiff herself that she is able to concentrate.   Specifically, Plaintiff testified that she can drive a car, asserted in her function report that she can maintain a checkbook and watch television, and failed to indicate on that report that she had problems concentrating or completing tasks, even though there were check boxes available on that form that would allow her to assert limitations in those areas.   ECF No. 15-2 at 16 (citing Plaintiff's hearing testimony; ECF No. 15-6 at 17–19).   Together, that evidence is sufficient to support the finding that Plaintiff does not meet the paragraph C criteria as to this area of functioning.   *See*, *e.g.*, *Garcia v. Colvin*, 83 F. Supp. 3d 1177, 1182 (D. Colo. 2015) (approving the ALJ's explanation that the claimant did not have significant deficits in concentration, persistence, and pace because she could, among other things, drive a car, which "requires substantial attention and concentration, in order to remember, understand[,] and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds"); *cf. Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (affirming the ALJ's finding that the claimant had only mild limitations in concentrating, persisting, or maintaining pace where the claimant stated that she could drive and shop and assist with household chores).

Dkt. 24 at 30–31.

The Court agrees that the cited evidence is sufficient to uphold the ALJ's finding with respect to Plaintiff's ability to concentrate, persist, or maintain pace.  The evidence described above is undeniably "more than a scintilla."  *Butler*, 353 F.3d at 999.  Indeed, as the ALJ noted, Plaintiff herself did not allege in the administrative proceeding that "her impairments have adversely affected [her] ability to follow instructions or complete tasks."  Dkt. 15-2 at 16.  For these reasons, the two cases to which Plaintiff cites are not persuasive:  In both, the cherry-picked example of a single mental status examination stood in contrast to the majority of the other evidence before the agency fact-finder.  *See* Dkt. 26 at 8 (first citing *Harris v. Berryhill*, 2019 WL 2068469, at *3 (D. Nev. May 10, 2019); then citing *Schweihofer v. Comm'r of Soc. Sec.*, 2019 WL 1339611, at *9 (E.D. Mich. Mar. 25, 2019)).

Plaintiff further objects to the ALJ's reliance on her testimony regarding her ability, among other things, to drive a car because the ALJ later rejected other portions of her testimony as "inconsistent with the medical evidence."  Dkt. 26 at 8.  But the ALJ was entitled to credit Plaintiff's testimony about her *ability* to drive and watch television and, at the same time, to discount her testimony about the *severity* of her symptoms.  If anything, those two determinations inform each other—it was reasonable for the ALJ to find that Plaintiff's testimony about her daily activity undercut her testimony about the severity of her symptoms.

3.

Plaintiff next argues that the Report and Recommendation relies on "impermissible post-hoc rationalizations" in considering the ALJ's finding that she did not have a marked or extreme limitation in the "adapting or managing [one]self" area of mental functioning of Paragraph C, namely by "attempt[ing] to re-write the ALJ's deficient evaluation" of this area.  Dkt. 26 at 8.  In her original motion for judgment of reversal, Plaintiff argued that the ALJ erred by not "at least minimally discussing evidence that she has taken the wrong dosage of medication, has had difficulties scheduling medical appointments, and has had continued difficulties driving since her stroke."  *Id*. at 8–9; *see* Dkt. 18-1 at 21–24.  The Report and Recommendation considers and rejects this argument.  Plaintiff now objects that in doing so, the R&R violated the *Chenery* doctrine: (1) by ignoring the ALJ's reasoning and, instead, concluding that none of this evidence "show[s] difficulty managing psychologically based symptoms" and (2) by relying on Plaintiff's testimony "that she had no trouble remembering to take medications," even though "the ALJ never mention[ed] or cit[ed] this testimony in his discussion of Paragraph C."  Dkt. 26 at 9–10.

In pressing this objection, however, Plaintiff misunderstands the *Chenery* doctrine.  "Under the *Chenery* doctrine, a reviewing court must confine itself to the grounds upon which

18

the record discloses that the agency's action was based," *Byers v. Comm'r of Internal Revenue Serv.*, 740 F.3d 668, 680 (D.C. Cir. 2014), and "[i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis," *Chenery Corp.*, 332 U.S. at 196.  Here, the Report and Recommendation is entirely compliant with that admonition.  The R&R begins by offering the regulatory definition of the "adapting and managing oneself" area of mental functioning, which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting."  Dkt. 24 at 32 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04C.4., 11.00G.3.b.iv) (capitalization altered).  As the R&R states, the regulations provide that:

> Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

*Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04C.4., 11.00G.3.b.iv).  The R&R then explains that:

> The ALJ pointed to medical evidence in the record that Plaintiff had appropriate thought content and intact judgment and was able to dress and groom herself appropriately.  ECF No. 15-2 at 16 (citing ECF No. 15-7 at 9, 23, 99; ECF No. 15-8 at 12, 139–40).  He further noted that Plaintiff testified that she could drive a car and shop in stores, "which would require her to be able to adapt to potentially stressful situations," and that in her function report she stated that she could go out with friends and that she did not need help or reminders [to] tak[e] medicine or do household chores.  ECF No. 15-2 at 16–17 (citing Plaintiff's hearing testimony; ECF No. 15-6 at 16, 18).  Substantial evidence thus supports the ALJ's finding that Plaintiff did not meet the paragraph C criteria as to this realm of functioning.

*Id.* at 32–33.  As the material quoted above makes clear, the Report and Recommendation's conclusion is based on reasoning and evidence that appeared in the ALJ's decision.

The portion of the Report and Recommendation to which Plaintiff objects arises in a wholly different context:  After correctly concluding that the ALJ's "adapting or managing oneself" determination was based on substantial evidence, Judge Harvey goes on to respond to *another* one of Plaintiff's arguments, namely that the ALJ had ignored different evidence in the record.  *See id.* at 33.  In response, the R&R observes that Plaintiff "failed to explain how such evidence is relevant to" the adapting or managing oneself area of mental functioning, which "is concerned with the claimant's ability to maintain well-being in a work setting, which includes the ability to manage psychologically-based symptoms." *Id.*  Against that backdrop, the R&R reasonably concluded that "the stray evidence to which Plaintiff points does not establish that Plaintiff's impairment led to difficulty managing psychologically-based symptoms that would interfere with her work." *Id.*

The R&R's reasoning does not present a *Chenery* (or any other) problem.  It is well-settled that an ALJ need not address every piece of evidence that a claimant offers.  *See Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)).  Instead, the ALJ must only "minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  In order to make that assessment, district courts must, in turn, decide whether the unaddressed evidence, in the first instance, reasonably can be considered material and, more aptly, contradictory.  Here, that is all that Judge Harvey did.  He did not violate the *Chenery* principle by merely observing that, Plaintiff, while arguing that the ALJ ignored important evidence, failed to explain how that evidence was relevant to the question at hand.  Plaintiff is correct that Judge Harvey referenced portions of Plaintiff's testimony that the ALJ did not cite, *see* Dkt. 26 at 9–10 (citing Dkt. 24 at 34), but

Judge Harvey's references merely illustrate that the evidence that Plaintiff claimed the ALJ had ignored was not contradictory or, indeed, even related to the area of mental functioning in question.

4.

Plaintiff's final Paragraph C argument relates to her contention that the ALJ erred by failing to discuss "physical functioning" when evaluating whether she met the Paragraph C criteria of Listing 11.04. Dkt. 26 at 10 (citing Dkt. 18-1 at 12). Recall that in order to meet the Paragraph C criteria, a claimant must demonstrate a "[m]arked limitation" in "physical functioning" *and* in at least one of four "areas of mental functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04.C. The R&R rejects Plaintiff's original argument, in part, because the ALJ *did* evaluate the physical functioning relevant to Paragraph C—although he did so in evaluating the Paragraph B criteria, which, like Paragraph C, require "an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04.B (internal citation omitted). Plaintiff objects because "the ALJ never made any cross-reference between his insufficient evaluation of Paragraph C and his earlier discussion of Paragraph B." Dkt. 26 at 10. In her words, the R&R "attempts to impermissibly substitute for the ALJ's lack of explanation by making a cross-reference the ALJ never made," thus violating *Chenery*. *Id.* The Court disagrees.

As the R&R correctly observes, the ALJ was not required to discuss Plaintiff's physical limitations multiple times in his decision. Dkt. 24 at 35–36; *see also McCartney*, 28 F. App'x at 279 ("[W]e agree with the district court that the ALJ need only review medical evidence once in his decision."). But even if that were not the case, as the R&R further observes, "any error

would be harmless, as the fact that Plaintiff did not have a marked limitation in any area of mental functioning necessarily means that she does not meet the Paragraph C criteria in Listing 11.04," regardless of any physical limitations.  Dkt. 24 at 35.

Apart from those discussed above, Plaintiff raises no other objection to Judge Harvey's conclusion that substantial evidence supports the ALJ's decision that Plaintiff does not meet the criteria set forth in Paragraph C of Listing 11.04 for vascular insult to the brain.  Because the Court is not required to review those portions of a magistrate judge's Report and Recommendation to which no objection is made, the Court will adopt in full the remaining relevant discussion from Judge Harvey's considered Report and Recommendation and will affirm the ALJ's determination regarding Listing 11.04.

## B.      Plaintiff's Objections Regarding the ALJ's RFC Determination

In her motion for judgment of reversal, Plaintiff also argued that the ALJ made several missteps in determining that she had the RFC to perform the full range of light work, including: (1) by failing to give appropriate weight to her treating physician's opinion, (2) by insufficiently explaining his findings as to her exertional limits, and (3) by erroneously rejecting her subjective testimony about the limiting effects of her symptoms.  Dkt. 18-1 at 24–40.  The Report and Recommendation considers and rejects each of these arguments.  Dkt. 24 at 37–60.  Plaintiff now objects to the manner in which each of her three arguments was resolved.  None of her objections is persuasive.

### 1.

Plaintiff first objects that the R&R "fails to recognize" that the ALJ's "evaluation of the opinion of [Plaintiff]'s treating physician, Dr. Janelle Dennis, is not supported by substantial evidence."  Dkt. 26 at 1; *see id.* at 11–16.  Plaintiff presented effectively the same argument to

Judge Harvey, *see* Dkt. 18-1 at 28, but now argues that the Report and Recommendation

"violates the *Chenery* doctrine by supplying a reasoning for the ALJ's conclusion which the ALJ

did not provide in his written opinion," Dkt. 26 at 12; *see id.* at 13.  That is incorrect.

Under the D.C. Circuit's treating physician rule, the opinions of treating physicians "must

be accorded substantial weight," given the "great familiarity" a treating physician has with her

patient's condition.  *Butler*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498

(D.C. Cir. 1993)).  Accordingly, "[a] treating physician's report is 'binding on the fact-finder

unless contradicted by substantial evidence,'" and an ALJ "who rejects the opinion of a treating

physician" is required to "explain his reasons for doing so."  *Id.* (quoting *Williams*, 997 F.2d at

1498).[4]

Here, the ALJ "considered and evaluated opinion evidence submitted by Dr. Dennis" and

gave that opinion "partial weight."  Dkt. 15-2 at 24.  As the ALJ noted, Dr. Dennis

> submitted a medical opinion stating that the claimant would be limited to
> sedentary work; would be limited in her ability to push or pull using her lower
> extremities; could never crouch, crawl or climb ropes, ladders o[r] scaffolds;
> could frequently climb ramps and stairs; could occasionally balance, stoop, and
> kneel; would need to avoid concentrated exposure to extreme cold, humidity,
> pulmonary irritants, and workplace hazards; and would need to avoid even
> moderate exposure to extreme heat (Exhibit 11F).

*Id.*  Although the ALJ found that this opinion was "supported by a treating relationship with the

claimant," he also found that it was "not entirely consistent with the rest of the evidence."  *Id.*

He continued:

> In particular, this opinion is inconsistent with [the] *physical examinations
> discussed above* showing that the claimant has intact sensation throughout, a

---

[4] The Report and Recommendation assumes, without deciding, that the D.C. Circuit's treating
physician rule remains good law.  Dkt. 24 at 37 n.23.  *But see David v. Kijakazi*, 2023 WL
5035935, at *10 n.12 (D.D.C. Aug. 8, 2023) ("This Court, like a number of other district courts,
agrees that the new regulations are binding upon it and abrogate prior inconsistent precedent like
the D.C. Circuit's . . . treating physician rule.").

normal range of motion in all of her extremities, is able to ambulate without an assistive device, and only had [a] "mild" weakness on her right side.   [Dr. Dennis's] opinion is also inconsistent with the fact that the vast majority of physical examinations discussed above have shown that the claimant has normal breathing sounds.

*Id.* (emphasis added).

In her initial motion, Plaintiff argued that the ALJ failed to "cite specific examples of inconsistent evidence from the record." Dkt. 18-1 at 28.  She submitted that the ALJ "failed to provide any page references, any explanation of what he saw in these records that supported his conclusion, or any basis for a reviewing Court to conclude that Dr. Dennis' opinion was contradicted by substantial evidence."  *Id.*  Judge Harvey rejects this argument because "the ALJ's decision includes a comprehensive review and citation of the physical examination evidence supporting his findings."  Dkt. 24 at 40 (citing Dkt. 15-2 at 20).  That the ALJ referred back to "physical examinations discussed above" in evaluating Dr. Dennis's opinion, Dkt. 15-2 at 24, "rather than setting out the citations again[,] [wa]s immaterial," Dkt. 24 at 40.

Plaintiff now objects that the ALJ failed to include specific record citations in his evaluation of Dr. Dennis's opinion and that the R&R improperly substitutes its reasoning for the ALJ's reasoning by supplying the missing citations.  Dkt. 26 at 11–12.  Plaintiff mischaracterizes both the R&R and the ALJ's decision.  Contrary to her objection, the R&R does not "rewrit[e] the ALJ's explanation to refer to [an] earlier evaluation . . . despite the actual decision lacking this cross-reference."  *Id.* at 11–12.  Instead, the ALJ plainly referred to physical examinations "discussed above" in his decision and found that Dr. Dennis's opinion was "inconsistent" with that above-discussed evidence.  Dkt. 15-2 at 24.  The R&R merely looks to the specific record citations that appeared "above" in the ALJ's decision.  Dkt. 24 at 40 (citing Dkt. 15-2 at 20, 24).  Judge Harvey did not err by reasoning that:  "The fact that, in the paragraph discussing Dr.

Dennis's opinion, [the ALJ] refers to 'physical examinations discussed above' rather than setting out the citations again is immaterial." *Id.* (internal citation omitted).

Judge Harvey also correctly evaluated Plaintiff's original argument that the "ALJ erred by failing to discuss her testimony regarding her use of a cane when evaluating Dr. Dennis' opinion," Dkt. 26 at 13 (citing Dkt. 18-1 at 30); *see* Dkt. 24 at 41–42, and the Court adopts Judge Harvey's persuasive reasoning in full, *see* Dkt. 24 at 41–42.  Plaintiff, in a now familiar refrain, objects that the R&R errs by citing the ALJ's discussion "in an entirely different part of [the ALJ's] decision," which addressed inconsistencies between Plaintiff's "subjective statements" and "the medical evidence."  Dkt. 26 at 13.  But the cited discussion does not appear in an "entirely different part" of the ALJ's decision.  Both the cited discussion about Plaintiff's testimony *and* the ALJ's discussion of Dr. Dennis's opinion appear in the section of the ALJ's decision devoted to determining Plaintiff's RFC.  *See* Dkt. 15-2 at 18–24.  And, in any event, the thrust of Plaintiff's argument is unhelpful:  Although it is true that Plaintiff testified that she uses a cane, Dr. Dennis opined, as Plaintiff herself acknowledges, that Plaintiff could ambulate *without* an assistive device.  *See* Dkt. 18-1 at 29–30 (first citing Dkt. 15-2 at 76–77; then citing Dkt. 15-22 at 104).  Thus, Plaintiff's testimony (that she used a cane) would, if anything, *contradict* Dr. Dennis's opinion (that she does not require an assistive device).  Even assuming that the ALJ should have considered Plaintiff's testimony regarding her use of a cane in evaluating Dr. Dennis's opinion, moreover, an ALJ is not required to repeat his evaluation of the same evidence merely for the sake of completeness—particularly within the same step of the sequential analysis.

2.

Plaintiff next objects to the Report and Recommendation on the ground that it "fails to recognize that the ALJ impermissibly played doctor and ignored the medical opinion of every physician on record when determining that [Plaintiff] had the RFC to perform the full range of light work." Dkt. 26 at 16.  She argues that the R&R "fails to acknowledge that all four physicians agree that [Plaintiff] cannot perform a full range of light work." *Id.* at 14.  That is incorrect.  The R&R explains:

> [T]he ALJ clearly expressed the reasoning underlying his assessment of Plaintiff's RFC throughout his discussion of the medical and other evidence. For example, he found that physical examinations "generally" showed that Plaintiff "has a normal range of motion in both of her upper and lower extremities, which would support finding that she is capable of performing the full range of light work" and that she "has intact hand and finger dexterity, normal grip strength bilaterally, intact sensation throughout, normal reflexes, and normal muscle tone," which "would support not including environmental or manipulative limitations." ECF No. 15-2 at 20.  He also found a limitation to the full range of light work was supported by medical evidence showing full strength in Plaintiff's upper and lower extremities; normal gait, station, and motor function; improvement in her speech, strength, coordination, and balance; normal breathing sounds, breathing effort, heart sounds, sinus rate, sinus rhythm, and peripheral pulses; regular heart rate; clear lungs; and pharmacologically-controlled hypertension. *Id.* at 20–21.  The ALJ cited non-medical evidence supporting his findings, as well, such as Plaintiff's testimony that she could drive and had no restriction on her license, her reports to health care providers that she could independently perform activities of daily living, and her function report that stated that she could prepare meals and perform household chores and failed to indicate any issues with kneeling, squatting, bending, reaching, or seeing.  ECF No. 15-2 at 22.  Additionally, based on such evidence, the ALJ rejected the opinions of Drs. Goo, Bedeau, Nolte, and Dennis to the extent that they recommended additional exertional or non-exertional limitations, such as the State agency consultants' proposed restrictions on balancing, stooping, climbing, and exposure to workplace hazards; Dr. Nolte's proposed restriction on balancing and walking on uneven surfaces; and Dr. Dennis' proposed restriction on carrying more than ten pounds. *Id.* at 23–24.  The ALJ's discussion is sufficient.

Dkt. 24 at 56–57.

Ultimately, Plaintiff's objection is not premised on the ALJ's failure to consider the medical opinions of the four doctors but, rather, on a disagreement with the ALJ's reasoned findings.  The ALJ found, for example, that the opinions offered by Dr. Bedeau and Dr. Goo were "not entirely consistent with the rest of the evidence," including the "physical examinations discussed," which showed that "the claimant has a normal range of motion in her extremities and intact sensation throughout" and Plaintiff's own testimony, which undercut their opinions regarding "visual limitations."  Dkt. 15-2 at 23.  The ALJ afforded the opinions of Dr. Nolte and Dr. Dennis partial weight for similar reasons, fully explicated in the ALJ's written decision.  *Id.* at 23–24.  It is not the Court's role "to second-guess the ALJ by reweighing the evidence." *Callaway*, 292 F. Supp. 3d at 298.

3.

Plaintiff next objects that the Report and Recommendation "fail[s] to recognize" that the ALJ "failed to properly credit [Plaintiff's] subjective statements regarding the intensity, persistence, and limiting effects" of her symptoms.  Dkt. 26 at 16 (typeface and capitalization altered).  More specifically, Plaintiff argues that the R&R "errs by assuming [that] the ALJ could properly support his rejection of [Plaintiff's] testimony by cherry picking isolated facts about [her] daily activities without at least minimally discussing evidence and testimony in the record consistent with [Plaintiff's] subjective statements."  *Id.* at 19.  Plaintiff claims that the R&R "wrongly finds [that] the ALJ had *no responsibility* to consider [Plaintiff's] testimony concerning physical limitations, such as her right-side heaviness, problems carrying anything over ten pounds, difficulties walking and shopping, and fatigue, or [her] testimony concerning her mental limitations, such as her anxiety when driving and trouble concentrating."  *Id.* at 18–19 (emphasis

27

added).  In short, the core of Plaintiff's argument is that the ALJ improperly ignored contradictory testimonial evidence and that the R&R "fails to recognize" as much.

Plaintiff's characterization of the R&R is again inaccurate.  Plaintiff raised substantially the same argument in her initial motion, Dkt. 18-1 at 37–40, and the R&R includes a thorough discussion of the evidence supporting the ALJ's assessment of Plaintiff's testimony, observing that where the ALJ discounted Plaintiff's testimony, he "articulated a specific, rational reason" for doing so and "not[ed] . . . inconsisten[cies] with test results, physical examinations, and Plaintiff's own representations" of her activities of daily living.  Dkt. 24 at 45–46.

As the Seventh Circuit has observed, an "ALJ need not . . . discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability."  *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010); *see also Lane-Rauth*, 437 F. Supp. 2d at 67; *Goodman*, 233 F. Supp. 3d at 109.  Here, the Court is satisfied that the ALJ considered all of the relevant evidence in the record and that his decision is both supported by substantial evidence and adequately explained.  There is, of course, a line between exercising reasonable judgment in declining to cite and discuss every piece of evidence and engaging in impermissible "cherry picking."  But, for the reasons set forth in the Report and Recommendation, the Court is persuaded that the ALJ's decision does not cross that line.

Likewise, assessment of Plaintiff's symptoms and their consistency with record evidence "is solely within the realm of the ALJ and is only to be disrupted when an ALJ fails to articulate a rational explanation for his or her finding."  *Davis v. Saul*, 2020 WL 3542232, at *4 (D.D.C. June 30, 2020) (internal quotation marks omitted) (quoting *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012)).  In arguing that the ALJ erred by failing to credit Plaintiff's testimony that she self-imposes restrictions on driving at night, gets anxious while driving under certain

conditions, and has difficulty lifting items heavier than ten pounds while grocery shopping, *see* Dkt. 26 at 17, Plaintiff asks this Court to reweigh the evidence.  Under the applicable, highly deferential standard of review, *see Jackson ex rel. M.J.J. v. Berryhill*, 249 F. Supp. 3d 141, 145–46 (D.D.C. 2017), the Court cannot do so.

Finally, Plaintiff incorrectly asserts that the Report and Recommendation "finds [that] the ALJ had *no responsibility* to consider [Plaintiff's] testimony concerning physical limitations," Dkt. 26 at 18 (emphasis added).  To the contrary, the R&R accurately concludes that the ALJ *did* consider that testimony and offered specific, rational reasons for discounting that testimony, Dkt. 24 at 45–46.  Because Plaintiff's objections largely rehash the same arguments that she made in her initial motion and because she points to no specific legal or factual error in the Report's assessment, the Court adopts the R&R's discussion in full.

## C.    Plaintiff's Objection Regarding the ALJ's Use of the Grids

Plaintiff's final objection to the Report and Recommendation—that it "fails to recognize that the ALJ erred as a matter of law by using the medical-vocational guidelines," known as the "Grids," in rendering his decision—fares no better.  Dkt. 26 at 19 (capitalization and typeface altered).

As the Supreme Court has explained, an ALJ may use the Grids in appropriate circumstances, but "only when they describe a claimant's abilities and limitations accurately." *Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983); *see also id.* at 467–68.  "If an individual's capabilities are not described accurately by a rule [in the Grids], the regulations make clear that the individual's particular limitations must be considered."  *Id.* at 462 n.5.  Notably, the Grids "do not take into account nonexertional impairments."  *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).  As the relevant regulation explains:

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting *the strength requirements* of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments.  In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions.  Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (emphasis added).

Thus, "if the claimant has exertional and nonexertional limitations and is not disabled based on strength limitations alone," *Smith*, 826 F.2d at 1122, then the Grids "provide [merely] a *framework* for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations[,]" but "full consideration must be given to all of the relevant facts in the case[.]"  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (emphasis added).  Most importantly, when a claimant's particular limitations require that the Grids be used merely as a "framework," the Commissioner "must introduce vocational evidence to determine whether a significant number of jobs exist in the national economy that the Plaintiff may perform."  *Davis v. Shalala*, 862 F. Supp. 1, 9 (D.D.C. 1994).

Here, although the ALJ heard testimony from a vocational expert, he did not rely on that testimony to decide whether there were sufficient jobs in the national economy that Plaintiff could perform, Dkt. 15-2 at 25, 92–95, and, instead, consulted the Grids to determine whether Plaintiff was disabled under the statute and relevant regulations, *id*. at 25.  Plaintiff's original motion argued that the ALJ's exclusive reliance on the Grids was error because she "has a combination of exertional and nonexertional limitations," for which the Grids do not account. Dkt. 18-1 at 43.  The R&R considers and rejects that argument.  *See* Dkt. 24 at 58–62.

Plaintiff now argues that the ALJ's exclusive reliance on the Grids was error because, on her telling, the record conclusively establishes that she has "non-exertional limitations," Dkt. 26 at 19, and "[t]he unrefuted medical opinions of Drs. Dennis, Nolte, Bedeau, and Goo" establish that she also has "exertional limitations which preclude [her from] performing the full range of light work," *id.* at 22.   The major premise of Plaintiff's argument is correct:  If a claimant "has exertional and nonexertional limitations and is not disabled based on strength limitations alone," *Smith*, 826 F.2d at 1122, then the ALJ may not rely exclusively on the Grids.  *See Davis*, 862 F. Supp. at 8–9; *see* Dkt. 26 at 20–21.   The minor premises of Plaintiff's argument, however, are incorrect—that is, despite Plaintiff's arguments to the contrary, substantial evidence supports the ALJ's RFC determination that she was capable of performing "the full range of light work with no additional [non-exertional or relevant exertional] restrictions," Dkt. 24 at 62; *see id.* at 54–57, 60 n.30; *see also, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) ("If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform."); *Graham v. Comm'r of Soc. Sec.*, 622 F. App'x 841, 843 (11th Cir. 2015) ("Because the ALJ found [the plaintiff's] subjective complaint of [non-exertional limitation] not fully credible, there was no error in relying exclusively on the [Grids] as the ALJ did not find that [the plaintiff] had a nonexertional impairment.").

With respect to the ALJ's determination that Plaintiff could perform the full range of light work, the ALJ reasonably found that "[p]hysical examinations have generally shown that the claimant has a normal range of motion in both of her upper and lower extremities, which would support finding that she is capable of performing the full range of light work" and that she

"has intact hand and finger dexterity, normal grip strength bilaterally, intact sensation throughout, normal reflexes, and normal muscle tone," which "would support not including environmental or manipulative limitations."  Dkt. 15-2 at 20.  The ALJ cited non-medical evidence supporting his findings as well, such as Plaintiff's testimony that she could drive and had no restriction on her license, her reports to health care providers that she could independently perform activities of daily living, and her function report, which stated that she could prepare meals and perform household chores and which failed to note any issues with kneeling, squatting, bending, reaching, or seeing.  *Id.* at 22.  Based on this evidence, the ALJ rejected the opinions of Drs. Goo, Bedeau, Nolte, and Dennis to the extent that they recommended additional limitations, such as the State agency consultants' proposed restrictions on balancing, stooping, climbing, and exposure to workplace hazards; Dr. Nolte's proposed restriction on balancing and walking on uneven surfaces; and Dr. Dennis's proposed restriction on carrying more than ten pounds.  *Id.* at 23–24; *see* Dkt. 15-22 at 104.

As for non-exertional limitations, the ALJ reasonably found that the evidence did "not support including mental limitations such as limiting the claimant to unskilled or low-stress work in her residual functional capacity."  Dkt. 15-2 at 22.  He cited medical evidence in the record that Plaintiff was "alert and well-oriented, ha[d] appropriate thought contact, and intact insight and judgment;" had "intact language and comprehension skills and [was] able to follow complex commands;" could "recall three / 3 words after a brief delay on at least one occasion;" had "normal concentration and attention, could spell words backwards and forwards, could perform serial 3s, and was able to count and perform calculations with quarters;" "was pleasant and cooperative, was able to dress and groom herself appropriately, and maintained good eye contact;" and, according to the "vast majority of mental status examinations[,] . . . had a normal

mood and affect." *Id.*  The ALJ also cited non-medical evidence, such as Plaintiff's testimony

that she could drive a car, "which would require her to be able to perform tasks of varying

intellectual complexity, maintain functional levels of concentration, and be able to adapt to

potentially stressful situations;" could shop in stores, "which would require her to be able to

interact with others appropriately and adapt to potentially stressful situations such as crowding;"

and could "pay bills, count change, handle a savings account, and use a checkbook, which would

require her to be able to maintain functional levels of concentration and perform tasks of varying

intellectual complexity." *Id.* at 23.

Plaintiff offers two responses, neither of which is persuasive.  First, with respect to non-

exertional restrictions, she notes that, at the hearing, the ALJ asked the vocational expert a

question about a hypothetical person who had non-exertional limitations.  Dkt. 26 at 23.  But a

hypothetical is just that.  It is not evidence.  Nor does it mean, as Plaintiff submits, "that the ALJ

concluded that the non-exertional limitations that he listed were supported by [Plaintiff's]

medical evidence of record." *Id.*

Second, with respect to her RFC, Plaintiff merely re-surfaces the evidence discussed

above, namely the opinions of Drs. Dennis, Nolte, Bedeau, and Goo.  *See* Dkt. 26 at 22.  But

Plaintiff does not argue that the ALJ's determination with respect to her RFC is unsupported by

substantial evidence; instead, she simply points to evidence supporting the opposite conclusion.

In that respect, Plaintiff "appears to be asking this [C]ourt to conduct a *de novo* review of the

ALJ's decision and reweigh the evidence." *Jackson*, 249 F. Supp. 3d at 147.  That argument

ignores the proper standard of review, which requires that the Court uphold the ALJ's findings if

they are "'supported by substantial evidence' and 'not tainted by an error of law.'" *Ali v. Colvin*,

236 F. Supp. 3d 86, 90 (D.D.C. 2017) (quoting *Porter*, 951 F. Supp. 2d at 129).  Indeed, "[i]f

supported by substantial evidence, the Commissioner's finding[s] must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id.* (final alteration in original) (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010))); *Kober v. Apfel*, 133 F. Supp. 2d 868, 873 (W.D. Va. 2001) ("The Commissioner's decision, 'if supported by substantial evidence, must be affirmed even though the reviewing court believes that substantial evidence also supports a contrary result.'" (quoting *Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972))).  Here, the ALJ's findings are supported by substantial evidence.

## CONCLUSION

For these reasons, the Court rejects Plaintiff's objections and **ADOPTS** in full Magistrate Judge Harvey's well-reasoned Report and Recommendation, Dkt. 24.  The Court, accordingly, will **DENY** Plaintiff's motion for judgment of reversal, Dkt. 18, and will **GRANT** the Commissioner's motion for judgment of affirmance, Dkt. 20.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 3, 2024